

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF OREGON**

**DAVID W. HERCHER**
BANKRUPTCY JUDGE

1001 S.W. FIFTH AVENUE, # 700
PORTLAND, OREGON 97204
(503) 326-1538

COLLIN M. COLE
LAW CLERK

DORIA D. ARNTSEN
JUDICIAL ASSISTANT

October 19, 2018

NOT FOR PUBLICATION

Bonnie M. Jahangiri
10251 N.W. Skyline Heights Drive
Portland, OR 97229
via First-Class Mail

Michael Blaskowsky
via ECF only

Subject:   In re Bahram Jahangiri
           Case No. 18-31609-dwh7

Greetings:

On August 14, 2018, I held an evidentiary hearing in this case on the Motion to Extend Time to file Complaint filed by Bonnie Jahangiri on August 6.[1] She represented herself, and Michael Blaskowsky represented debtor, Bahram Jahangiri. Because the Jahangiris share a last name, I refer to Bonnie Jahangiri as Bonnie and Bahram Jahangiri as Bahram.

In the motion, Bonnie requested a 30-day extension of the deadlines to file a complaint to deny a discharge to Bahram and to determine that his debt to her is not dischargeable.

Bahram didn't do anything to prevent Bonnie from filing a complaint by the August 6 deadline, and she didn't learn anything between the petition date and August 6 that affected whether she should have been aware that she could file a complaint. Thus, Bonnie has not demonstrated cause for an extension of that deadline to file a complaint.

I will deny the motion. This letter constitutes my findings of fact and conclusions of law.

**I.    Facts**

On June 19, 2016, Bonnie, without a lawyer, filed against Bahram in the Multnomah County, Oregon, Circuit Court, a complaint seeking damages for, among other things, assault, battery, and intentional infliction of emotional distress. The allegations of the complaint include that he struck her in her face, injuring her, and that he shook, twisted, and struck her in an attempt to remove her phone from her hand while she was attempting to call 911, resulting in several contusions, a sprain, and several strains. The complaint refers to their pending divorce

---

[1] Docket item 42.

Bonnie M. Jahangiri
Michael Blaskowsky
October 19, 2018
Page 2

action in the same court.[2] The assault action remained pending on the date of the bankruptcy petition.[3]

According to her testimony, Bahram injured her foot, for which she has had one surgery and expects to have a second one. He was arrested and charged with felony assault and interfering with her making of a report of the assault. On June 21, 2017, his lawyer committed to documenting a settlement of the tort action, which was to include his agreement to pay her surgery costs. The settlement agreement was never executed, nor was a stipulated judgment resolving the tort action prepared or entered. She was attempting to prepare a judgment when the bankruptcy petition was filed.

On May 7, 2018, he filed his petition initiating this chapter 7 case.[4] That day, this court issued its Notice of Chapter 7 Bankruptcy Case—No Proof of Claim Deadline on Official Form 309A.[5] On page 1, the second sentence, in bold, states that the notice "has important information about the case for creditors . . ., including information about . . . deadlines." In the fourth paragraph, it states that the "debtors" (here, Bahram) are "seeking a discharge" and "[c]reditors who assert that the debtors are not entitled to a discharge of any debts or who want to have a particular debt excepted from discharge may be required to file a complaint in the bankruptcy clerk's office within the deadlines specified in this notice. (See line 9 for more information.)" On page 2 of the form, section 6 includes the court clerk's office address where "[d]ocuments in this case may be filed." It also includes the office hours and contact telephone number. Also on page 2, section 7 states in bold the date, time, and place of the meeting of creditors; the date was June 6, 2018. Finally, on page 2, section 9 is entitled "Deadlines." The first column of that section states that the documents addressed by that section, and any required filing fee, must be received by the court clerk's office by the specified deadline. The second column of that section begins with the bolded direction to "File by the deadline to object to discharge or to challenge whether certain debts are dischargeable." The second columns then states that "[y]ou must file a complaint: If you assert that the debtor is not entitled to receive a discharge of any debt under any of the subdivisions of 11 U.S.C. § 727(a)(2) through (7), or if you want to have a debt excepted from discharge under 11 U.S.C. § 523(a)(2), (4), or (6)." The third column of that second consists of the bold statement "Filing deadline: 8/6/18."

On May 10, the Bankruptcy Noticing Center mailed the Form 309A to, among others, Bonnie at the address of her home in Portland, Oregon.[6] She conceded in her testimony that she received it by mail at her residence within seven days of the notice's May 7 date.

On May 24, Bonnie, represented by lawyer Elizabeth Savage, filed a motion for relief from the automatic stay to permit her to finalize the divorce.[7] That motion made no reference to

---

[2] Trial Exhibit (Tr. Ex.) 2.
[3] Tr. Ex. 3.
[4] Docket item 1.
[5] Docket item 5.
[6] Docket item 8.
[7] Docket item 19.

the assault action or any claim by Bonnie that Bahram is not entitled to a discharge or that any claim by her against him is not dischargeable.

On August 6, representing herself, she filed the deadline-extension motion. In it, she states that the 30-day extension would permit resolution of both the then-pending stay-relief motion and the divorce action.[8]

## II. Legal standards

### A. *Statutes and rules*

Under 11 U.S.C. § 727(a) and Federal Rule of Bankruptcy Procedure 4004(a), the bankruptcy court must grant a discharge to an eligible debtor automatically and "forthwith" unless a party in interest timely files a complaint challenging the discharge. Once entered, the discharge covers most but not all prebankruptcy debts.[9] Under 11 U.S.C. § 523(c) and Rule 4007(c), certain kinds of debts, including those based on fraud or willful and malicious injuries,[10] can be excepted from discharge—but not automatically. Instead, the burden is on the creditor to timely file a complaint to establish the exception.[11] If the creditor does not do so, despite knowing of the bankruptcy case in time to do so, the debt is included in the discharge.

If a creditor wants either to obtain a determination that its claim cannot be discharged or to prevent the debtor from obtaining a discharge altogether, the creditor must file its complaint no later than the 60th day after the first date set for the meeting of creditors.[12] If the 60th day runs on a weekend or holiday, it is extended to the first day that is neither a weekend or holiday.[13]

Here, the deadline to file a complaint objecting to Bahram's discharge or seeking to except a debt from his discharge was August 6, the Monday after the 60th day after the first date set for the meeting of creditors, which was a Sunday.

A creditor may request an extension of time to file either kind of complaint. The court can grant an extension "for cause" if the request is made before the deadline passes.[14] The rules do not define "cause."

### B. *"Cause" for extension of the deadline*

#### 1. Purpose of deadlines; construction

The short deadline to file a discharge-objection or dischargeability action—60 days after the first date set for the meeting of creditors—"allows debtors and creditors to determine relatively soon which debts may be excepted from discharge pursuant to § 523(c), and protects

---

[8] Docket item 42 at ¶ 1.
[9] *See* 11 U.S.C. § 523, 524.
[10] 11 U.S.C. § 523(a)(2), (6).
[11] Section 523(c)(1); Fed. R. Bankr. P. 4007(c)
[12] Fed. R. Bankr. P. 4004(a); 4007(c).
[13] Fed. R. Bankr. P. 9006(a)(1)(C).
[14] Fed. R. Bankr. P. 4004(b)(1); 4007(c).

the 'fresh start' policy from being weakened by dischargeability litigation long after bankruptcy."[15] The deadline to commence a dischargeability action allows debtors to determine relatively soon which debts will be excepted from discharge, "protects the 'fresh start' policy from being weakened by dischargeability litigation long after bankruptcy,"[16] and "allow[s] all participants within the bankruptcy proceedings to 'make better informed decisions early in the proceedings.'"[17]

Cause is "narrowly construed to promote the prompt resolution of the case and implementation of the debtor's 'fresh start.'"[18]

### 2. "Cause" formulations

Because Rules 4004 and 4007 both address whether and to what extent a debtor should receive a discharge, courts have recognized that "the standard for application of the time limits in those Rules should be consistent."[19] And because both rules set the identical 60-day deadline and permit extensions only for cause, cases interpreting Rule 4007(c) apply in interpreting Rule 4004(a).[20]

No U.S. Supreme Court cases define "cause" for extension of the deadline.

In the Ninth Circuit's 2013 decision in *Willms v. Sanderson*, the creditors' desire for more time to determine whether they "had a viable argument for nondischargeability—without any explanation of why they could not have made this determination within the time set by Rule 4007" was held not to establish cause for an extension. The court held that a case for cause must include an "explanation why [the creditors] could not have made this determination [whether they had a viable argument for nondischargeability] within the time set by Rule 4007."[21]

In cases where a creditor seeks an extension for more time to investigate whether to bring a discharge-objection or dischargeability action, courts have generally held that "cause" does not exist unless the creditor has diligently pursued investigation of possible actions before the deadline.[22]

Some courts have found cause for an extension when the creditor learns of facts supporting a potential discharge-objection or dischargeability action after the petition date and

---

[15] *In re Albert*, 113 B.R. 617, 618 (9th Cir. B.A.P. 1990). *See also In re Santos*, 112 B.R. 1001, 1006 (9th Cir. B.A.P. 1990) (60-day deadline in Rule 4007(c) furthers prompt administration of bankruptcy estates and fresh-start goals of bankruptcy relief).
[16] *In re Albert*, 113 B.R. at 618 (9th Cir. B.A.P. 1990).
[17] *In re Brown*, 102 B.R. 187, 190 (9th Cir. B.A.P. 1989).
[18] *In re Nowinsksi*, 291 B.R. 302, 305 (Bankr. S.D.N.Y. 2003).
[19] *In re Bomarito*, 448 B.R. 242, 248 (Bankr. E.D. Cal. 2011).
[20] *Kontrick v. Ryan*, 540 U.S. 443, 448 n.3 (2004); *In re Santos*, 112 B.R. 1001, 1004 n.2 (9th Cir. B.A.P. 1990).
[21] 723 F.3d 1094, 1104 (9th Cir. 2013).
[22] *In re Aloia*, 496 B.R. 366, 380, 385 (Bankr. E.D. Pa. 2013); *In re Bomarito*, 448 B.R. 242, 248 (Bankr. E.D. Cal. 2011); *In re Stonham*, 317 B.R. 544, 547 (Bankr. D. Colo. 2004); *In re Nowinski*, 291 B.R. 302, 306 (Bankr. S.D.N.Y 2003); *In re Desiderio*, 209 B.R. 342, 345 (Bankr. E.D. Pa. 1997); *In re Mendelsohn*, 202 B.R. 831, 832 (Bankr. S.D.N.Y. 1996).

with insufficient time before the deadline to permit the creditor to investigate the facts and prepare a complaint. In a 2013 decision of the Hawaii bankruptcy court, the court granted a short extension because the creditors had "recently been made aware of investigations by the bankruptcy trustee into potential fraudulent transfers and preference claims."[23]

New York bankruptcy courts use a five-part test for determining whether there exists cause for an extension:

> "(1) whether the creditor has received sufficient notice of the deadline and the information to file an objection; (2) the complexity of the case; (3) whether the creditor has exercised diligence; (4) whether the debtor has refused in bad faith to cooperate with the creditor; and (5) the possibility that proceedings pending in another forum will result in collateral estoppel of the relevant issues."[24]

Other courts have articulated similar tests.[25]

Bonnie relies on the Sixth Circuit's 2003 decision in *In re Maughan*, which affirmed the bankruptcy court's holding allowing the creditor to file a dischargeability complaint three days after the 60-day deadline. The debtor had failed to comply with an order requiring turnover of documents to the trustee, and the debtor had failed to fulfill promises to provide the documents to the creditor, preventing the creditor from investigating the potential claim. The Sixth Circuit identified five factors that should be considered in deciding whether to apply the doctrine of equitable tolling: "(1) lack of actual notice of filing requirement; (2) lack of constructive knowledge of filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement."[26] The Sixth Circuit held that the 60-day deadline is not jurisdictional, and in view of the debtor's failure to comply with the bankruptcy court's turnover order, the court acted within its discretion in allowing the late filing of the dischargeability complaint.

Most courts that have more recently addressed the definition of "cause" for an extension of the 60-day deadline have defined the term strictly. Recognizing the need for "expeditious administration" and the importance of the debtor's fresh start after bankruptcy,[27] these courts tend to demand a compelling reason for the extension and expect would-be objectors to be diligent in gathering the information they need to formulate and file a complaint.[28]

---

[23] *In re Vogelgesang*, No. 12-01468, 2013 WL 773066 (Bankr. D. Haw. Feb. 27, 2013). *See also In re Marsh*, No. 12-60195-7, 2012 WL 4482581, at *4 (Bankr. D. Mt. Sep. 26, 2012).
[24] *In re Chatkhan*, 455 B.R. 365, 367 (Bankr. E.D.N.Y. 2011), citing *In re Bressler*, No. 06–11897, 2007 WL 98493, at *1, 2007 WL 98493, at *3 (Bankr. S.D.N.Y. Jan. 12, 2007), citing *In re Nowinski*, 291 B.R. 302, 305 (Bankr. S.D.N.Y. 2003).
[25] *In re Stonham*, 317 B.R. at 548 n. 1.
[26] 340 F.3d 337, 344 (6th Cir. 2003).
[27] *In re Bomarito*, 448 B.R. 242, 251 (Bankr. E.D. Cal. 2011).
[28] *Id.*; *In re Marsh*, 2012 LEXIS 4462 at *10 (Bankr. D. Mont. Sept. 26, 2012); *Kohl v. Loefgren (In re Loegfren)*, 305 B.R. 288, 291 (W.D. Wis. 2003), aff'd, 85 Fed. Appx. 522 (7th Cir. Dec. 3, 2003); *In re Nowinski*, 291 B.R. 302, 306 (Bankr. S.D.N.Y. 2003); *In re Chatkhan*, 455 B.R. 365, 368 (Bankr. E.D.N.Y. 2011).

3.     **Burden of demonstrating cause**

A creditor seeking an extension of the discharge-objection deadline has the burden of demonstrating that cause exists.[29]

## III.  Discussion

### A.  *Bonnie's asserted cause for extension of the deadlines*

In her motion, Bonnie raised two grounds for an extension: the pendency of her stay-relief motion and her pro se status, but she did not describe the facts on which she could base a discharge-objection or dischargeability action. In her hearing memorandum, she denied having proper notice of the deadline, and she asserted that she had acted diligently to pursue her rights and that Bahram would suffer no prejudice from the extension.[30]

At the evidentiary hearing, she conceded that she timely received the Form 309A by mail at her residence, but she testified to other asserted barriers to her ability timely to file a complaint. The form was not understandable to her. She attended the meeting of creditors on June 6 but didn't understand why the trustee referred to her as a creditor or inform her of the August 6 deadline, and she felt that she was treated as though she didn't belong there. Without a lawyer, she learned of the August 6 deadline not from the notice but by doing her own research on the Internet, but not until Saturday, August 4. She didn't have time to create any type of document that would set forth the bases for an objection to discharge or a request for determination of dischargeability. She lacked the money to pay the filing fee to file a complaint.

She also testified to several complaints about how Bahram's papers and other actions in the bankruptcy case, including that he failed the means test, incorrectly described her tort action, listing it as "closed," and failed to disclose a debt to his sister that he had disclosed in the divorce action.

### B.  *There is no cause to extend the deadline.*

If I were to adopt the five-factor test in *Maugham*, urged by Bonnie, I would find that each of the five factors weighs against her: (1) she had actual knowledge of the filing requirement; (2) she had constructive knowledge of the requirement; (3) she was not diligent in pursuing her rights; (4) Bahram was prejudiced because he is entitled to a prompt determination of his right to a discharge or to the dischargeability of a particular debt; and (5) she was not ignorant of the notice requirement.

---

[29] *In re Aloia*, 496 B.R. at 380; *In re Marsh*, No. 12-60195-7, 2012 WL 4482581, at *2 (Bankr. D. Mt. Sep. 26, 2012); *In re Bomarito*, 448 B.R. at 248; *In re Weinstein*, 234 B.R. 862, 866 (Bankr. E.D.N.Y. 1999).
[30] Docket item 52.

### 1. The Form 309A provided Bonnie with proper notice of the deadlines.

Except for information to Bahram's case and other immaterial exceptions, the text and formatting of the Form 309A follows that of Official Form B 309A.[31] Official forms are approved by the Judicial Conference of the United States, and bankruptcy courts are required to use them.[32] The current version of Official Form B 309A has been in use since December 2015. None of the form's language is ambiguous, and she points to no authority that the form fails adequately to give notice of the 60-day deadline.

### 2. Bonnie's lack of representation by a lawyer does not constitute cause.

Bonnie next argues that her status as an unrepresented litigant constitutes cause for an extension. She testified that she did not understand the requirement to file a complaint by the deadline, despite having acted as diligently as she could in researching the relevant law and determining what she needed to do to protect her rights. She researched law using Fastcase, Google, and court websites, and case law was understandable to her. She cites no authority that a creditor's lack of representation by a lawyer constitutes cause for an extension. And in any case, I can't find on the record that she was not reasonably able to prepare and filed a discharge-objection or dischargeability complaint by the August 6 deadline. As a litigant and witness, she appeared to have above average intelligence, which belies her argument that she could not have understood from the Form 309A that she had to file a complaint by August 6.

### 3. The other grounds asserted by Bonnie do not constitute cause.

The pendency of the stay-relief motion has no relation to a potential discharge-objection or dischargeability action.

Nothing that occurred at the meeting of creditors constitutes cause for an extension. No misrepresentations were made to her, and neither the trustee nor anyone else there was responsible for advising her.

Her inability to pay the filing fee is not cause for an extension.

None of Bahram's alleged errors in his bankruptcy papers or disclosures has any logical connection to her ability to prepare and file her complaint. With respect to her possible discharge-objection and dischargeability action against him, what mattered was that he properly listed her as a creditor so that she would receive the Form 309A—and that he did.

## IV. Conclusion

The complaint deadline benefits primarily the debtor by providing assurance that any discharge or dischargeability litigation will be commenced early in the case. An extension would diminish that assurance, so cause for the extension should ordinarily consist of an act or omission

---

[31] http://www.uscourts.gov/forms/meeting-creditors-notices/notice-chapter-7-bankruptcy-case-no-proof-claim-deadline-individuals
[32] Fed. R. Bankr. P. 9009(a).

Bonnie M. Jahangiri
Michael Blaskowsky
October 19, 2018
Page 8

by the debtor that in some manner prejudices that creditor's ability to timely commence an action.

      Here, Bahram didn't do anything to prevent Bonnie from filing a complaint by August 6, and she didn't learn anything between the petition date and August 6 that affected whether she thought she should file a complaint. She received timely and proper notice of the deadline and is thus charged with meeting it. In the Ninth Circuit's words: "Although we construe their pleadings liberally, pro se litigants are bound by the rules of procedure."[33]

      Bonnie has not demonstrated cause for an extension of that deadline to file a complaint.

      I will prepare and enter an order denying the deadline-extension motion.

                                Sincerely,

                                DAVID W. HERCHER
                                Bankruptcy Judge

---

[33] *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995).